[Cite as *State v. Butler*, 2012-Ohio-4152.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97649**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTOINE C. BUTLER

DEFENDANT-APPELLANT

### JUDGMENT:
### REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-554685

**BEFORE:** Stewart, P.J., Keough, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** September 13, 2012

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street, Second Floor
Cleveland, OH    44114


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Vincent I. Pacetti
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

MELODY J. STEWART, P.J.:

{¶1} Defendant-appellant Antoine Butler was found guilty of second degree burglary under R.C. 2911.12(A)(2), with a repeat violent offender specification for breaking into an apartment. The dispositive issue in this appeal is whether the evidence established that Butler trespassed in an occupied structure in which someone was present or likely to be present. We find that the state failed to prove this essential element of burglary under R.C. 2911.12(A)(2), but that the evidence supported a conviction on a lesser included offense of burglary, as a third degree felony, under R.C. 2911.12(A)(3), so we reverse and remand with instructions for the court to modify Butler's conviction.

{¶2} In his first assignment of error, Butler complains that the state failed to present proof that he trespassed in an occupied structure. He points to evidence showing that the victim-tenant of the apartment he broke into was hospitalized at the time of the offense, a fact that testimony showed had been known to the "whole neighborhood."

{¶3} We determine whether the evidence is sufficient to sustain a verdict by examining the evidence in the light most favorable to the prosecution and determining whether any rational trier of fact could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, at ¶ 78, quoting *Jackson v. Virginia*, 443

U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[I]t is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, _____, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).

**{¶4}** The state charged Butler with burglary under R.C. 2911.12(A)(2). That section required the state to prove that Butler did, by force, stealth, or deception:

> Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

**{¶5}** R.C. 2909.01(C) defines an "occupied structure" as any house or building that is "maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present."

**{¶6}** The evidence showed that the victim owned an "up-and-down" duplex and lived in the lower unit. A witness to the burglary lived in the upper unit. The victim had health issues that periodically required his hospitalization and he was hospitalized on the night of the burglary. The witness and a friend were in her apartment upstairs at the

time of the burglary. She testified that she knew the victim had been hospitalized, so she was surprised to hear noises coming from his apartment around 4:30 a.m. Thinking that the victim had been released from the hospital, she tried to telephone him, but received no answer. She continued to hear noises below, and told her friend that she was sure someone was in the victim's apartment. She opened a window, leaned out, and saw that a boarded-up, ground floor window to the victim's unit had been disturbed. On the ground beneath the window was a milk crate that had apparently been used to boost the burglar into the unit. She called out the victim's name, but received no response. She then called out the name "Shorty," a nickname she knew that Butler used. She said that she thought it might be Butler because "he's always on the prowl in the neighborhood." When she again received no response, she yelled, "[w]hoever it is, the way you went in is the way you got to come out. I'm calling 911." The witness explained that the victim had security bars on his doors that prevented ingress and egress, so she knew that the burglar's only exit would be through the same window that provided entry to the unit.

{¶7} The witness called the police. A recording of that telephone call has the witness narrating events to the emergency operator as they unfolded. She saw a male exit the same window and immediately recognized him as "Shorty." The witness could be heard in the recording telling Butler that she just called the police because he broke into the house. She is also heard saying, "it wasn't open" in reply to something that Butler said to her. In trial testimony, the witness said that Butler also told her that he saw

a white car parked in front of the house, insinuating that the occupants of that car had broken into the house and he was merely investigating. The witness identified Butler from a photo array and also identified him at trial. The victim was released from the hospital the following day and discovered that $150-$200 in cash and prescription pills were missing from his apartment. The victim gave no testimony to suggest that anyone else had access to his apartment, a fact verified by the witness who said that the burglar would have to exit from the same window that provided entry.

{¶8} The unlawful-entry-in-a-dwelling offenses — aggravated burglary, burglary, and breaking and entering — prohibit the same conduct (trespassing in a structure with the intent to commit a criminal offense) and differ only on the risk of harm the actions pose. The most serious of the offenses — aggravated burglary — requires the offender to be armed or requires that he inflicts, attempts to inflict, or threatens to inflict harm on another. *See* R.C. 2911.11. The intermediate offense — burglary — presents a less serious scenario than aggravated burglary because it does not entail the use of a weapon or threat or infliction of harm, yet can still pose a risk of harm when a person is present or likely to be present. *See* Committee Comment to R.C. 2911.12 (burglary "is viewed as serious, because of the higher risk of personal harm involved in maliciously breaking and entering an occupied, as opposed to an unoccupied, structure." Breaking and entering is the least serious in the hierarchy because a trespass in an unoccupied structure carries a "comparatively low risk of personal harm[.]" *See* Committee Comment to R.C. 2911.13.

{¶9} The state can establish the "present or likely to be present" element of burglary under R.C. 2911.12(A)(2) by showing that the occupants of the dwelling were "in and out on the day in question[.]" *State v. Kilby*, 50 Ohio St.2d 21, 361 N.E.2d 1336 (1977), paragraph one of the syllabus. *See also State v. Hibbard*, Butler App. Nos. CA2001-12-276 and CA2001-12-286, 2003-Ohio-707. Thus, even if chance or happenstance prevent a person from being present in a structure at the time of the trespass, the statute recognizes the potential for harm that could ensue given someone's presence or the likelihood that a person would be present. If a person is unlikely to be present at the time of the trespass, the risk of harm is so reduced that the trespass becomes less serious.

{¶10} The witness testified that the victim had been in the hospital at the time of the burglary and that she was surprised to hear noises coming from his apartment because she did not know that he had returned. The victim, too, testified that he had been in the hospital. His testimony gave no indication that he was likely to be present at his house at the time of the burglary.

{¶11} The state argues that "any casual observer" would have expected the victim to be home because it is "common knowledge that hospitals are open 24 hours a day, and people can be released at any time." Appellee's brief at 8. However, the state must show more than a mere *possibility* that a person is likely to be present during the trespass of an occupied structure. *State v. Jackson*, 188 Ohio App.3d 803, 2010-Ohio-1846, 937

N.E.2d 120 (4th Dist.2010), at ¶ 9. Precedent has rejected the likelihood of a person being home during normal work hours, absent evidence to the contrary. *See, e.g.*, *State v. Durham*, 49 Ohio App.2d 231, 239-240, 360 N.E.2d 743 (1st Dist.1976).

**{¶12}** We see no reason to distinguish this case, where the victim was in the hospital, from cases where a work schedule made it unlikely that a person would have been present at the time of the break-in. Hospitals typically do not release patients at 4 a.m., a fact verified by the witness who thought it odd that the victim would have returned to his apartment at that hour. It may have been possible that the victim could be released from care at that time, but his release at that hour was so unlikely that no rational trier of fact could have found the victim going "in and out" of the apartment in a way that made him likely to be present at the time of the burglary.

**{¶13}** The state argues that the victim lived in a duplex that had a common hallway with stairs going up to the door to the witness's apartment and that Butler's entry into the victim's apartment would allow him access to the common hallway and stairway leading to the witness's apartment. This evidence, the state maintains, was sufficient to show that the witness was present at the time of burglary and could have been the object of harm as a result of the break-in.

**{¶14}** We have rejected this same argument as being too broad. To highlight its fragility, in *State v. Colon*, 8th Dist. No. 61253, 1992 WL 389074 (Dec. 17, 1992), we gave as an example a high-rise apartment complex that has shared common halls with

doors to any number of individual apartments. Taking the state's argument to its logical conclusion would suggest that, as long as any person in the entire high-rise building was present in his or her own apartment, a trespass in an apartment where a person was not present or likely to be present would be sufficient to establish the elements of burglary under R.C. 2911.12(A)(2).

{¶15} This is not a case where the break-in occurred in a common area of an apartment building. *See, e.g.*, *State v. Williams*, 1st Dist. No. C-920869, 1993 WL 547184 (Dec. 1, 1993) (break-in occurred in common laundry room of an apartment building where any tenant of the building was likely to be present). Neither is this a case where tenants had access to an unoccupied apartment. *See, e.g.*, *In re R.J.D.*, 11th Dist. No. 2009-L-071, 2010-Ohio-1277 (finding that person likely to be present in an unoccupied apartment because tenants of the building where an apartment was located had regular access to the apartment and apartment could be occupied at any time by them or their guests).

{¶16} We therefore find that the state failed to prove that anyone was present or likely to be present in the apartment at the time of the break-in. As a consequence, the state failed to establish each element of the offense of burglary under R.C. 2911.12(A)(2).

{¶17} Nevertheless, Crim.R. 33(A)(4) provides a reviewing court with the power to modify a judgment "[i]f the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof[.]" *State v. Reed*,

65 Ohio St.2d 117, 123, 418 N.E.2d 1359 (1981); *State v. Brown*, 10th Dist. No. 05AP-601, 2006-Ohio-2307, ¶ 18. *See also* App.R. 12(B) ("When the court of appeals determines that the trial court committed error prejudicial to the appellant and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court and render the judgment or final order that the trial court should have rendered[.]")

{¶18} Burglary under R.C. 2911.12(A)(3) is a lesser included offense of burglary under R.C. 2911.12(A)(2) because it contains all but the R.C. 2911.12(A)(2) element of the presence or likely presence of someone other than an accomplice of the offender. *State v. Broyles*, 5th Dist. No. 2009 CA 0072, 2010-Ohio-1837, ¶ 40; *In re Meatchem*, 1st Dist. No. C-050291, 2006-Ohio-4128. There being no evidence to show that anyone was home or likely to be home at the time of the burglary, the evidence supports a finding of guilt under R.C. 2911.12(A)(3). We therefore sustain the assignment of error and remand with instructions for the court to modify the judgment of conviction to find Butler guilty of burglary under R.C. 2911.12(A)(3). *See State v. Rothrock*, 8th Dist. No. 93602, 2010-Ohio-4102, ¶ 20.

{¶19} Our holding necessarily requires that Butler be resentenced, so his claims relating to the length of his sentence are moot.

{¶20} This cause is reversed and remanded for proceedings consistent with this opinion.

It is ordered that appellant recover of appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____

MELODY J. STEWART, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR